IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRITEQ LOCK & SECURITY LLC,

             Plaintiff,

    v.

HMC HOLDINGS LLC,

             Defendant.

Case No. 11 C 843

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant HMC Holdings, LLC's (hereinafter, "HMC") Motion to Dismiss Triteq Lock & Security LLC's (hereinafter, "Triteq") Complaint. The Complaint seeks in Count I a declaration of patent invalidity under the Declaratory Judgment Act, 28 U.S.C. § 2201, and alleges in Count II false patent marking under 35 U.S.C. § 292. For the reasons that follow, the Motion is denied as to Count I, but granted as to Count II.

## I. BACKGROUND

Triteq's request for a declaratory judgment of patent invalidity is based on a letter sent by George Garifalis ("Garifalis"), the Chief Financial Officer of HMC. Apparently, according to HMC's Motion to Dismiss, at one point the parties had a business relationship in which Triteq purchased products from Homak Manufacturing, a predecessor company of HMC, and then from HMC directly. Triteq purchased and resold locking pistol boxes

from HMC, but in early 2010 decided to begin manufacturing its own boxes.

Currently, there is pending litigation between Triteq and entities that share common ownership with HMC. In relation to that litigation, attorneys for Triteq sent a letter to Garifalis on January 18, 2011, questioning the completeness of his response to certain subpoenas served on those entities. Garifalis responded with an angry missive, dated January 31, 20011, in which he described the discovery requests as "garbage" and said his responses were complete. Relevant to the instant case, he added that he wanted to provide Triteq "with formal notice on two other unrelated matters that require immediate attention." First, Garifalis said that Triteq was using certain of HMC's logos on its Web site without permission. Garifalis then added:

> Secondarily, it would appear that Tri-Teq is selling a RouTeq safe that is a direct copy of an HMC patented pistol box. US Patent No. US D461,955 S. http://www.triteqlock.com/products3.html. Tri-Teq does not have authorization to manufcature *[sic]* from HMC, nor has Tri-Teq paid for the delivery of a small batch of said boxes from HMC. First, Tri-Teq must either pay for the units delivered, or return them in their original condition. Second, Tri-Teq must cease from ony *[sic]* further sale and advertisement of said box. Furthermore, it is requested that Triteq hand over all records of any sales of this Box since January 15, 2006, the customers' names and contact details, dollar amounts and any open orders, as well as who may may *[sic]* contracted for its manufacture. Failure to promptly respond to this very serious breach of our patent rights will not be tolerated. A response within 7 days from receipt of this letter is required.

Triteq responded by bringing the instant Complaint on February 7, 2011.

## II. <u>ANALYSIS</u>

### A. COUNT I: Declaratory Judgment

HMC's Motion to Dismiss Count I is brought pursuant to F‌ED. R. C‌IV. P. 12(b)(1) because it contends that the Court lacks subject-matter jurisdiction. On a Rule 12(b)(1) motion, the Court may consider matters beyond the allegations in the complaint. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

Under the Declaratory Judgment Act, a party to an "actual controversy" can seek a declaration of its legal rights. 28 U.S.C. § 2201(a). HMC argues, however, that there is no actual controversy in this case because Triteq created the dispute "in its own mind and to suit its own purposes."

The parties agree that the relevant test for determining whether a case or controversy exists under the Declaratory Judgment Act is set out in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). There, the Court held that there is no bright-line rule as to when the case-or-controversy requirement is satisfied by a declaratory judgment action. *Id.* at 127. But the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and it must be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising

what the law would be upon a hypothetical state of facts." *Id.*
(quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41
(1941)).

The Federal Circuit has viewed *MedImmune* as abrogating its
"reasonable apprehension" test, which the Court had used to
determine whether there was an actual controversy in suits
requesting a declaration of patent invalidity. *Sony Elec., Inc. v.
Guardian Media Tech., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007).
That test required a two-pronged inquiry into:  (1) whether the
plaintiff produced or was prepared to produce an allegedly
infringing product; and (2) whether conduct by the patentee had
created a reasonable apprehension on the part of the plaintiff that
the patentee would file suit if the allegedly infringing activity
continued.  *Id.*  Instead, the Federal Circuit now applies what it
terms an "all circumstances" standard, which means that the court
is to take into account the circumstances as a whole in determining
if a justiciable controversy exists.  *Teva Pharm. USA, Inc. v.
Novartis Pharm. Corp.*, 482 F.3d 1330, 1341 (Fed. Cir. 2007).

The Federal Circuit has provided helpful guidance in
determining when such circumstances exist.  Declaratory judgment
jurisdiction generally does not arise just because a party learns
of the existence of a patent owned by another or perceives that
there is a risk of infringement, "without some affirmative act by
the patentee." *SanDisk Corp. v. STMicroElectronics, Inc.*, 480 F.3d

- 4 -

1372, 1381 (Fed. Cir. 2007).  "But Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id.*  As such, when a patent holder claims rights under a patent based on certain identified activity of another party, and that party asserts that it has the right to engage in that activity without a license from the patent holder, jurisdiction lies.  *Id.*

Here, Garifalis told Triteq that it appeared to him that its product was a "direct copy" of an HMC pistol box and provided the number for the patent he contends applies to that box.  He also requested the names of Triteq's customers and their contact information.  He "required" a response to the letter within seven days (which would have been February 7, 2011, the date Triteq filed suit) and warned that "failure to respond to this very serious breach of our patent rights will not be tolerated."  HMC describes these assertions as an "equivocal" statement that does not form an accusation of infringement, but the Court disagrees.  Given Garifalis' statements requesting Triteq's customer information, it would have been reasonable for Triteq to be concerned that HMC planned to approach its customers and suggest that its product infringed HMC's patent.  It also was reasonable for Triteq to fear that a suit over the '955 patent was imminent.  *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008)(holding

that existence of a reasonable apprehension of suit is one way to satisfy the "all circumstances" test). In light of all the circumstances, Garafalis' letter put Triteq in the position of either pursuing arguably illegal behavior by continuing to sell its pistol boxes, or abandoning those sales, even though it believed it had a right to engage in them. This amounts to an actual controversy between the parties.

HMC argues that Triteq filed suit in an effort to settle the score over the discovery dispute in the unrelated lawsuit or as an attempt to gain leverage in that suit. HMC cites *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir. 1996), *overruled in part on other grounds*, *MedImmune*, 549 U.S. at 132 n. 11, for the proposition that a district court may decline to exercise jurisdiction in declaratory judgment actions when a party uses intimidating tactics to gain leverage over its opponent. But unlike in that case, here there is no affirmative evidence that Triteq brought the instant lawsuit in an effort to enhance its position in the unrelated suit. For these reasons, HMC's Motion to Dismiss Count I for lack of subject-matter jurisdiction is denied.

### B. Count II: False Marking

HMC's Motion to Dismiss Count II of Triteq's Complaint is brought under FED. R. CIV. P. 12(b)(6). Such a motion requires the Court to accept as true all well-pled factual allegations in the plaintiff's complaint and draw all reasonable inferences in its

favor.  *Pfizer Inc. v. Apotex Inc.*, 726 F.Supp.2d 921, 927 (N.D. Ill. 2010) (citing *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)).

To survive a motion to dismiss, the complaint must give the defendant fair notice of the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Further, it must be sufficient to raise the possibility of relief above a "speculative level."  *Id.*  Detailed allegations are not required, but the complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 550)).

The False Marking statute, under which Triteq brings Count II, provides, in relevant part:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . shall be fined not more than $500 for every such offense.

35 U.S.C.A. § 292(a).

In Count II, Triteq alleges that HMC advertises its pistol boxes as patented through its Web site and a Web flyer.  Triteq alleges that HMC created the advertisements and uses them to increase the sales of its pistol boxes by causing customers to believe that HMC holds the exclusive right to make pistol boxes with the advertised design features.  Triteq alleges that its research has uncovered no design patent that covers the boxes, and

"[n]otwithstanding, HMC advertised the pistol boxes as patented with knowledge that the advertised pistol boxes are not patented." Pl.'s Comp. ¶ 35.

HMC raises several challenges to Triteq's pleading, but the only one with merit is its allegation that Triteq has not adequately alleged an intent to deceive the public through its advertising.  The Federal Circuit has recently held that a false marking plaintiff must plead the case with particularity under FED. R. CIV. P. 9(b).  *In re BP Lubricants USA, Inc.*, 632 F.3d 1307, 1311 (Fed. Cir. 2011).  There, the court held that a complaint alleging false marking was insufficient when it asserted conclusory allegations that the defendant was a "sophisticated company," and therefore "knew or should have known" that the patent at issue was expired.  *Id.* at 1312.

In *BP Lubricants*, the court noted "a pleading that simply avers the substantive elements of a claim sounding in fraud or mistake, without setting forth the particularized factual bases for the allegations, does not satisfy Rule 9(b)."  *Id.* at 1311 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009)).  Although knowledge and intent may be pled generally, the pleadings must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."  *Id.* (quoting *Exergen*, 575 F.3d at 1327.); *see Simonian v. Cisco Systems, Inc.*, No. 10 C 1306, 2010

WL 2523211, *4 (N.D. Ill. June 17, 2010) (["[T]he mere fact of mismarking a product does not necessarily show knowledge or intent."]).

Here, the problem is that Triteq has not pled sufficient underlying facts to show that HMC knew the '955 patent was invalid. In its response brief, Triteq contends that HMC must have known that its patent was invalid because it advertises its small, medium, and large pistol boxes as patented, but a single patent cannot cover three different designs. However, this allegation does not appear in Plaintiff's complaint. Further, the Court notes that it is similar to the allegations found insufficient in *BP Lubricants* in that it essentially amounts to an allegation that HMC was a sophisticated company that should have known that the claims in the '955 patent could not have covered all of those products.

Nor do any other allegations appear in the complaint as to how HMC knew of the patent's alleged invalidity. Because Triteq's Complaint contains no "objective indication to reasonably infer" that HMC was aware of any invalidity of the '955 patent, it is dismissed. *BP Lubricants*, 637 F.3d at 1311. Triteq is given leave to replead within 30 days of the date of this order.

Because Triteq may replead, the Court will briefly address HMC's other arguments in regard to the false marking claim. First, contrary to HMC's argument, there need not be any allegation that the products themselves are marked as patented in order to sustain

a false marking claim. False marking can occur in advertising. *See Hollander v. Timex Group USA*, No. 10-429, 2011 WL 1399806, at *6 (E.D. Pa. April 13, 2011) (noting that false marking statute "prohibits readily visible marks – on products themselves, affixed to products, or used in advertising in connection with products – falsely indicating that an unpatented article enjoys patent protection."). Further, accepted as true, Triteq's allegations concerning HMC's Web site and Web flyer would constitute advertising. *See Inventorprise, Inc. v. Target Corp.*, No. 09 C 380, 2009 WL 3644076, *4 (N.D.N.Y. Nov. 2, 2009)(describing advertising as "an act soliciting the general public regarding a product"); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F.Supp.2d 1284, 1334 (S.D. Cal. 2010)(finding that advertising on Web site was false marking).

HMC also argues that a false marking claim is incompatible with Triteq's request for a declaration of invalidity in regard to the '955 patent, but this is not so. Alleged false marking by the patentee may be raised in a suit requesting a declaration of invalidity. *See Mayhew Corp. v. Rodstein*, 620 F.2d 1347, 1359 (9th Cir. 1980).

Finally, HMC argued in its memorandum in support of dismissal that the False Marking Statute is unconstitutional, citing *Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc.*, --- F.Supp.2d. ---, 2011 WL 924341 (N.D. Ohio March 14, 2011). Although HMC abandoned

this argument for the time being in its reply brief, the Court notes that the issue of whether the statute violates the Take Care Clause is currently before the Federal Circuit in *United States ex. Re. FLFMC, LLC v. Wham-O, Inc.*, No. 201-1067 (Fed. Cir. appeal docketed Nov. 10, 2010).

## III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant HMC's Motion to Dismiss is denied as to Count I and granted as to Count II.  Triteq is given 30 days from the date of this Order to replead Count II in accordance with FED. R. CIV. P. 9(b).

**IT IS SO ORDERED.**

_____
　　　Harry D. Leinenweber, Judge
　　　United States District Court

**DATE:** 7/5/2011